**ATTACHMENT NO. 1**

## METROPOLITAN POLICE DEPARTMENT
### Washington, D. C.
**ARREST/PROSECUTION REPORT**
P.D. 163 Rev. 3/2001     G.O. 401.5

| Field | Value |
|---|---|
| 1. PERSON NOTIFIED OF NAME CHANGE – UNIT – DATE/TIME – NCIC NO. (ID ONLY) | |
| 2. ID NUMBER (ID ONLY) | |
| 3. DEFENDANT'S TRUE NAME – LAST, FIRST, MIDDLE (ID ONLY) | |
| 4. CID NUMBER | |
| 5. UNIT-ARREST NO. | 03010 1879 |
| 6. DEFENDANT'S NAME – LAST, FIRST, MIDDLE (At time of arrest) | Dyson, George Harry |
| 7. DEA LAB NUMBER | |
| 8. Arresting Officer's Name | Nieman, Walter C |
| Rank | Ofc |
| Badge # | |
| Agency | MPD |
| 9. TYPE OF RELEASE | ☐ CITATION ☐ BOND ☐ COLLATERAL |
| 10. NICKNAME / ALIAS | None |
| 11. PHONE NUMBER | |
| 12. COURT DATE | 04/03/01 |
| 13. ADDRESS | Washington DC |
| 14. TIME IN D.C. | Life |
| 15. ☐ CHILD ABUSE ☐ GANG ☐ HATE SPECIAL INTELLIGENCE ☐ SENIOR CITIZEN ☐ DOMESTIC VIOLENCE | |
| 16. SEX | Male |
| 17. RACE | Black |
| 18. BIRTHDATE | |
| 19. SOCIAL SECURITY NUMBER | |
| 20. NEED INTERPRETER | ☐ YES ☒ NO |
| 21. HEIGHT | 6" 0" |
| 22. WEIGHT | 170 |
| 23. HAIR | Blk |
| 24. EYES | Brn |
| 25. COMPLEX | Med |
| 26. PERMIT NO/ST | |
| 27. BIRTHPLACE | Washington, DC |
| 28. CO-DEFENDANTS: Number 0 | |
| 29. IMPERSONATOR? | ☐ M ☐ F ☒ NO |
| 30. ETHNICITY | African American |
| 31. CAUTION | None |
| 32. SCARS/MARKS/TATTOOS | None |
| 33. HAT | Black |
| 34. JACKET | Grey |
| 35. PANTS | Blue |
| 36. COAT | None |
| 37. SHIRT | Black |
| 38. SKIRT/DRESS | None |

**39. WALES/NCIC CHECK**

| CHECK MADE BY | NCIC NUMBER | WARRANT ON FILE |
|---|---|---|
| JIMENEZ | | Yes ☐ No ☒ |

| 40. LOCATION OF OFFENSE | DATE OF OFFENSE | TIME OF OFFENSE |
|---|---|---|
| 2801 Georgia Ave, Northwest, Washington, DC 20001 | 04/02/01 | 1429 |
| **40. LOCATION OF ARREST** | **DATE OF ARREST** | **TIME OF ARREST** |
| 2801 Georgia Ave, Northwest, Washington, DC 20001 | 04/02/01 | 1630 |

| 42. ASSISTING OFFICER | ASSISTING OFFICER |
|---|---|
| Jefferson, T. Officer | Barnhart, Officer |

**43. DEFENDANT ADVISED OF RIGHTS**

| DATE | TIME | LOCATION | OFFICER'S NAME | BADGE NO. | UNIT |
|---|---|---|---|---|---|
| | | | | | |

**44. COMPLAINANTS / WITNESSES**

| | NAME | ADDRESS | BIRTHDATE | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|
| W-1 | Awuku-Adams, Doreen | | Adult | | |
| W-2 | Poitras, Margaret | | Adult | | |

| 45. SPEC. OPS | 46. TACTICS | 47. PREMISES | 48. SCHOOL ZONE / PUBLIC HOUSING |
|---|---|---|---|
| None | 2 - Radio Run | 25 - Bank /Credit Union | ☐ ☐ |

| CHARGES | NOI OR WARRANT NUMBER | CCN | MPD DISPOS. | COLLA./BOND RECEIPT |
|---|---|---|---|---|
| 1. Uttering | | | Lock up | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

**50. PROPERTY RECOVERY / ITEMS OF EVIDENCE**

| PROPERTY BOOK/ PAGE NO. | CSES NO. | 51. INITALS – DATE – UNIT OF PERSON TAKING PRINT | 53. RIGHT THUMB PRINT |
|---|---|---|---|
| | | | |

**52. M. O. WEAPONS, HANGOUTS, HABITS, INSTRUMENTS**
Writes bad checks

DISTRIBUTION: Page 1 to ID & R.; Page 2 & 3 to Prosecutor; Page 4, Unit Copy; Page 5 Officer's Copy
COMPLETE ALL REQUIRED FIELDS AND MAKE FIVE

**GOVERNMENT EXHIBIT**
**No. 19-1**
Cr. # 05-455 (CKK)

### 55. EMPLOYMENT HISTORY (List present employment if any, on Line 1)

| FROM–DATE–TO | EMPLOYER | ADDRESS | BUS. PHONE | OCCUPATION |
|---|---|---|---|---|
| 1. 4/98 9/00 | Thomas A Raine | 4567 Annapolis Road Blad MD | 301-367-2100 | Plumber |
| 2. | | | | |

### 56. NAMES OF LIVING FAMILY, RELATIVES, FRIENDS AND ASSOCIATES (Begin with immediate family)

| RELATIONSHIP | DOB/AGE | NAME – LAST, FIRST, M.I. | ADDRESS – STREET CITY STATE ZIP CODE | PHONE NUMBER |
|---|---|---|---|---|
| Aunt | 54 | Robinson, Janet | | |
| | | | | |
| | | | | |

| 57. MILITARY SERVICE: BRANCH/DATE FROM – TO | 58. TELEPHONE CALL MADE | 59. PHONE NUMBER |
|---|---|---|
| Marine Corp - 1959-63 | ☐ YES ☐ NO ☐ REFUSED | 301-340-3003 |

**60. STATEMENT OF FACTS:** (Give a brief statement in your own words, of the facts surrounding the offense and the arrest. (Use Continuation Form PD 202A for additional space. Note present condition of any injured person(s). Do not give Witnesses' Names or Addresses. Refer to them as W1 or W2, etc as indicated in Item 31.)

The event occurred on 04/02/01 at approximately 1429 at 2801 Georgia Ave, Northwest, Washington, DC 20001 in Washington DC.

I was working operating PSA3071 and working 10-99. I was dispatched, along with Officers Barnhart and Jefferson, to 2801 Georgia Ave to investigate the trouble. While enroute to the address, the dispatcher advised the units to be on the lookout for George Dyson. The dispatcher further advised that George Dyson was in the bank at this time and the bank personnel were having problems cashing a check.

Upon arrivial, I observed D-1 exiting the bank. I stopped D-1 because he had just exited the bank and asked him what was happening in the bank. D-1 stated to me that he was not in the bank he just stopped to look in the window and the door was locked. I then told D-1 to walk back to the bank with me. D-1 complied. Once at the front door to the bank, we were met by Complainant 1 who informed us that D-1 had attempted to cash a check that was stolen. D-1 then spontaneously stated that the check was given to him for work done and he did not steal anything. Further investigation revealed that D-1 entered the bank, waited in line, and then presented the check for payment. C-1 states she then told D-1 she would need his identification and a finger print in order to cash the check. D-1 complied and awaited the monies for the check. C-1 states she then scanned the check at which time the computer advised the check was "OUT OF SEQUENCE". C-1 then called the bank security center, which in turn called Complainant 2.

C-2 and C-3 arrived on the scene and advised that they were the only authorized check endorsers for the company and that check number had been stolen. C-2 and C-3 further stated that the check in question was not authorized nor issued by either C-2 or C-3.

D-1 was identified by a Washington DC drivers license as George Harry Dyson.

D-1 was placed under arrest and transported to 3D.

**61. DEFENDANT'S VERSION / REMARKS:** [What did defendant say about the offense or his/her whereabouts at the time of offense? (Use PD 118 for defendant's written statement.)]

| 62. RECORD CLERK'S NAME | | 3. | 5. | 64. PROPERTY BOOK/PAGE NO. PRISONER'S PROPERTY ONLY |
|---|---|---|---|---|
| ARREST RECORD SUMMARY | | 4. | 6. | |
| 1. | 2. | | | |

**65. BAIL REFORM ACT CASES:** Was a statement made by defendant in reference to his/her failure to appear? ☐ Yes ☐ no
(If yes, include in Defendant's Version/Remarks Section above.)

| 66. PRINTED NAME – OFFICER MAKING STATEMENT | BADGE NUMBER | RANK | 68. SIGNATURE OF REVIEWING OFFICIAL |
|---|---|---|---|
| Nieman, Walter C | | Officer | |
| 67. SIGNATURE OF OFFICER MAKING STATEMENT | UNIT | DATE 4/2/2001 | UNIT | DATE 4-2-01 |

Det Gregory Sullivan
April 2, 2001
Monday

On this date, I assisted in the investigation into the attempted passing of a stolen check at First Union bank, 2801 GA Avenue NW. On my arrival, I found the defendant seated in an office inside the bank. I introduced myself and he and I conversed at length over the issue at hand. At no time did the defendant indicate that he did not want to speak with me; quite the contrary, he was very interactive, calm and candid. At no time did I inform him he was under arrest. In fact, I told him that the investigation could lead to his arrest, but that I was merely investigating the offense at that point.

As a result of my interview, the defendant told me that:

- He received three checks drawn from The Wingate real estate company's First Union account
- He received these checks from a person known to him as "Reds"
- Reds hangs out at 7th & T Streets NW and deals in credit fraud
- He cashed check # 117 on Thursday, March 29, 2001, at the First Union branch at 2801 GA
- The check was in the amount of $625 or $650
- He attempted to cash check #115 today at the same branch in the amount of $800+
- He had a third check inside a rental vehicle parked out front
- He was aware from Reds that the checks had been taken without authorization from the account holder by a female unknown

Upon his arrest, he was transported to 3d for processing. There, I interviewed him again. He was first provided two bottles of water, two candy bars and a cigarette. He was not handcuffed at any point during the interview. Upon waving his rights on video (no pd47 was prepared), the defendant added the following:

- He believed that the checks were stolen
- Before trying to cash the second check, he tried to contact the Wingate to determine if they had learned of the theft since he cashed the first check on Thursday
- He filled in the payee and amount on the first check in handwriting
- He had Reds type in the payee and amount on the second check
- Reds signed both checks "A Wingate"
- He was to cash the checks and provide half the proceeds to Reds
- If he was unable to cash the checks, whose amounts Reds was privy to, he would be required to return the check to Reds as proof that he had not received cash
- However, he was unable to resolve the fact that he was allowed by Reds to maintain a third blank check (which the defendant pulled from his car and turned over to police OTS)
- He has a cocaine and heroin habit
- The defendant was cooperative and attempted to provide suspect information in area shootings

(See video)

GOVERNMENT EXHIBIT
**No. 19-4**
Cr. # 05-455 (CKK)

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION

UNITED STATES

vs.

KEITH A. CAMPBELL

On April 2, 2001, at approximately 1429, Officers Nieman, Barnhart and Jefferson were dispatched to the First Union Bank at 2801 Georgia Avenue, N.W. to investigate the trouble. While en route to the address, the dispatcher advised the responding units to be on the lookout for George Dyson. The dispatcher further advised that George Dyson was in the bank at the time and the bank personnel were having problems cashing a check.

When Officer Nieman arrived, he observed the defendant exiting the bank. Officer Nieman stopped the defendant and asked him what was happening in the bank. The defendant told him that he was not in the bank, that he had just stopped to look in the window, and that the door was locked. Officer Nieman then told the defendant to walk back to the bank with him. The defendant complied. Once at the front door to the bank, Officer Nieman and the defendant were met by C-1, who informed Officer Nieman that the defendant had attempted to cash a stolen check. The defendant then spontaneously stated that the check was given to him for work he had done, and that he had not stolen anything. Further investigation revealed that the defendant had entered the bank, waited in line, and then presented the check for payment. C-1 stated that the defendant complied with C-1's instruction that defendant's identification and fingerprint would be required in order to cash the check. While the defendant waited to receive the proceeds, C-1 scanned the check, and the computer advised that the check was "OUT OF SEQUENCE." C-1 then called the bank security center, which in turn called C-2.

C-2 and C-3 arrived on the scene and advised Officer Nieman that they were the only individuals authorized to endorse checks for the company account holder, and that the check at issue had been stolen. C-2 and C-3 further stated that the check in question was neither authorized nor issued by either C-2 or C-3.

The defendant was carrying a Washington, D.C. driver's license in the name of George Harry Dyson. Further investigation revealed that the defendant's true name is Keith Anthony Campbell. The defendant later admitted that he had received a total of three checks that he believed to be stolen, to having successfully cashed on March 29, 2001 another check drawn on the same account, at the same bank, for $625 or $650, and to possessing in his car the third check.

The events and acts described above occurred primarily in the District of Columbia and were committed as described by defendant(s) listed in the case caption.

Subscribed and sworn before me this 3 day of April 2001

Police Officer _____ Badge _____ District 3-D   Deputy Clerk

GOVERNMENT EXHIBIT

No. 19-5

Cr. # 05 455 (CKK)

GOVERNMENT EXHIBIT
No. 19-6
Cr. # 05-455 (CKK)

*George H Dyson*

no comment on FQ

---

**WINGATES LLC - SECURITY ACCOUNT** 08/00
C/O MATRIX REALTY GROUP
4660 MARTIN LUTHER KING AVE. SW
WASHINGTON, DC 20032

1115
15-125/540
BRANCH 01126

PAY TO THE ORDER OF  GEORGE H. DYSON

**********EIGHT HUNDRED TWENTY FIVE DOLLARS NO CENTS**********  DOLLARS

FIRST UNION
First Union National Bank
firstunion.com
R/T 054001220

DATE MARCH 28, 2001
$ 825.00

FOR EMERGENCY PLUMBING REPAIRS

REGRETFULLY, THIS CHECK STYLE DOES NOT PHOTOCOPY WELL.





GOVERNMENT EXHIBIT
**No. 19-7**
Cr. # 05-455 (CKK)